STONE, J.
*694 The trial court awarded W. A. Lucky, III ("Lucky"), nearly $1.8 million in damages resulting from the breach of a fiduciary duty owed to him by Barbara Marie Carey Lollar ("Lollar"). Lollar now appeals, and Lucky has answered the appeal. For the reasons stated herein, we reverse the trial court's judgment.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Lollar[1] lives and works in Bossier Parish as an independent contractor in the real estate business, performing various tasks on an "as needed" basis through her company, Magnolia Land Services, Inc. ("Magnolia"). From 1992 until 2003, Lucky, an extremely wealthy businessman and landowner, was a client of Lollar. Lollar's services included notarizing documents, researching titles, and assisting Lucky with sales of various properties. On a number of occasions, Lollar acted as an undisclosed agent for Lucky in real estate deals in which Lucky had an interest but did not want the sellers to inflate the prices due to his reputation and wealth. At some point during the course of their business relationship, Lollar became a close friend and confidante to Lucky and his family. Lollar had a key to the Luckys' home, spent holidays with the Luckys, and picked up their mail when the family was away at their vacation home in Florida. The family also heavily relied on Lollar during a time when Lucky was diagnosed with cancer and had to undergo treatment.
The Luckys own a large farm, and, according to Lucky, their dream was to acquire the adjoining 365-acre tract ("365 tract"). The tract was titled in the name of a company called Land Connection, Inc. ("Land Connection"), a corporation owned by Lucky's neighbor, Cal Woodward ("Woodward"). Because the two had been involved in a personal dispute, Woodward refused to sell the tract to Lucky.
At some point, Woodward did put the 365 tract up for sale, and in April of 2003, Lollar entered into a contract to purchase the tract for $425,000. She used her own funds to make an $80,000 down payment and executed a mortgage for the remaining $345,000. The note and mortgage were not assumable without Woodward's consent. Lollar made the annual installment payments until the balance of the mortgage was paid.
In September 2008, Lucky filed suit against Lollar, seeking monetary damages for breach of fiduciary duty. In his petition, Lucky asserted Lollar was acting as his agent when she purchased the 365 tract and was supposed to subsequently transfer its title to Lucky or an entity of his choosing. Lucky claimed the parties had agreed that once the title was transferred to him, he would be responsible for paying the mortgage. Although there was no written agreement between Lucky and Lollar, Lucky maintained that Lollar knew she was purchasing the property for him, and she breached her fiduciary duty by not deeding the tract to him.
Prior to trial on the matter, Lollar sold 85 acres of the tract. As of the time of trial, she still owned the remaining 280 acres. The trial court found that Lucky had established a principal-agent relationship between himself and Lollar vis-à-vis their agreement regarding the 365 tract. On that basis, the trial court found that Lollar's actions in failing to transfer the 365-acre tract to Lucky was a breach of fiduciary duty. The trial court awarded Lucky $1,799,450.52, plus judicial interest from the date of judicial demand. The *695 award included funds Lollar received for lease bonuses, royalty interests, and mineral production on the tract. The award also included proceeds from the sale of a portion of the tract by Lollar. On January 18, 2018, Lucky filed a motion for new trial limited to reargument seeking an increase in the amount of the trial court's judgment. Lucky argued that he should have also been awarded the value of the surface of the remaining 280 acres. The trial court denied Lucky's motion. Lollar appeals the trial court judgment, and Lucky has answered that appeal.
DISCUSSION
In her first assignment of error, Lollar argues that the trial court committed legal error when it held that Lollar was obligated to purchase immovable property on Lucky's behalf and then transfer the title to him. According to Lollar, the trial court failed to apply Louisiana legislation and jurisprudence which require a signed, written instrument to prove a mandate for acquiring rights in immovable property.
A legal error occurs when a trial court applies incorrect principles of law and such error is prejudicial. A legal error is prejudicial when it materially affects the outcome and deprives a party of substantial rights. Lasha v. Olin Corp. , 625 So.2d 1002 (La. 1993).
"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."[2] La. C.C. art. 2989. "The contract of mandate is not required to be in any particular form. Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." La. C.C. art. 2993. In relevant part, La. C.C. art. 1839 states: "a transfer of immovable property must be made by authentic act or by act under private signature." Finally, in pertinent part, La. C.C. art. 1832 states: "[w]hen the law requires a contract to be in written form, the contract may not be proved by testimony or presumption." In accordance with these principles, courts of this state have held that where a contract of mandate to purchase or sell immovable property is not in writing, it is invalid. E.g., Tedesco v. Gentry Dev. Inc., 540 So.2d 960, 965 (La. 1989) ; Simmons v. Clark, 08-431 (La. App. 5 Cir. 1/27/09), 8 So.3d 102, 109-110, writ denied , 09-0416 (La. 4/13/09), 5 So.3d 166.[3]
Professor Ronald J. Scalise, Jr., aptly explained the relationship between these Civil Code articles:
*696 The Louisiana Civil Code provides that when the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen.
....
When a writing is required for the validity of a contract, other acts related to that validity also require a writing. Thus, a mandate to buy or to sell immovable property must be in writing because the sale of immovable property requires a writing. Even a contract made in preparation of, or looking forward to, another contract that requires a writing must be made in writing also. Thus, a promise to sell, or an option to buy, immovable property must be made or granted in writing since the final sale of immovable property requires a writing.
S. Litvinoff & R.L. Scalise, 5 La. Civ. L. Treatise, Law of Obligations § 12.12 (2d ed., 2001) (emphasis added).
Lucky insists the primary issue before this court does not concern the purchase or sale of immovable property. Instead, Lucky asserts the question before the Court is whether Lollar is liable to him for damages for her breach of a fiduciary duty owed to him. These two issues cannot be bifurcated. The crux of Lucky's argument is that Lollar owed him a fiduciary duty to sell him the 365 tract because he gave her an oral mandate to purchase the tract and subsequently sell it to him or an entity of his choosing. Lucky asserts that Lollar breached that fiduciary duty when she refused to sell him the 365 tract, and now she is liable to him for damages.
Louisiana law is clear that a mandate to buy or sell immovable property must be in writing. Lucky nonetheless contends that the agreement between him and Lollar was not required to be in writing. In support of his argument, Lucky relies on Woodward v. Steed , 28,676 (La. App. 2 Cir. 9/25/96), 680 So.2d 1320, writ not cons. , 96-2648 (La. 12/6/96), 684 So.2d 411. In that case, Woodward[4] paid the defendant, Steed, to manage all of Woodward's properties and affairs while Woodward was out of the state. One of Woodward's instructions was for Steed to find a buyer for property Woodward owned near the Red River.
At some point, Horseshoe Casino approached Steed about purchasing the property and made an offer. Without disclosing Horseshoe's offer to Woodward, Steed himself purchased the property from Woodward, and subsequently sold the property to Horseshoe Casino for a large profit.
Woodward sued Steed for damages stemming from Steed's violating the fiduciary duty owed by a mandatary to timely reveal material facts to the principal, i.e., before buying the property from the principal. This Court determined that Woodward's mandate to Steed to secure a buyer for the property did not need to be in writing to support relief.
We draw a clear distinction between Woodward and the present case. In Woodward , the agreement was that the mandatary would merely assist the principal/owner in securing a buyer for his immovable property, i.e. , not to actually enter a transaction affecting title to the immovable property on behalf of the principal. In other words, the Woodward-Steed *697 mandate contemplated that Woodward's further approval would be required before any action affecting title to the immovable would be undertaken. Thus, in Woodward , the legal requirement that the mandate be in writing was not triggered. Conversely, in the present matter, Lucky's request was for Lollar to purchase the 365 tract in her own name and subsequently sell it to him or an entity of his choosing. Thus, the alleged agreement between Lucky and Lollar, if executed, would have resulted in the transfer of title to immovable property. This type of contract is required to be written in order to be valid and binding. La. C.C. arts. 1839 & 2993, supra. The legislature enacted these form requirements in an attempt to minimize the very scenario that we are presently confronting - disputes regarding the buying, selling, or otherwise transferring of immovable property where the parties have conflicting narratives about what, if anything, was agreed.
As a matter of law, without a written contract, there exists no enforceable contract between Lollar and Lucky as to the 365 tract. Lucky's failure to reduce to writing any agreement he claims he and Lollar had concerning the purchasing and/or selling of the 365 tract now precludes him from taking any action against her for breach of contract, damages, specific performance, or otherwise.
In its reasons for the judgment, the trial court provided a myriad of reasons for its determination that Lollar breached her fiduciary duty to Lucky by refusing to sell him the 365 tract. However, the trial court completely failed to address the unsatisfied form requirements clearly set forth in Louisiana Civil Code articles 1839 and 2993. The trial court's judgment condemning Lollar to pay Lucky nearly $1.8 million is thus prejudicial legal error.
In light of our finding that there was no enforceable contract between Lucky and Lollar, and that no duty was breached, the trial court's ruling must be reversed. All other assignments raised by the parties on appeal are therefore moot, and we pretermit any discussion of them.
CONCLUSION
Based on the foregoing reasons, we reverse the judgment of the trial court. Costs of this appeal are assessed to W. A. Lucky, III.
REVERSED.
GARRETT, J., concurs in the result.

Barbara Marie Carey Lollar's former name is Carr.

The term "mandatary" is synonymous with "agent."

See also John W. Stone Oil Distrib., LLC v. River Oaks Contractors & Developers Inc., 07-1001 (La. App. 5 Cir. 5/27/08), 986 So.2d 103 (plaintiff sought damages for breach of oral promise to sell immovable property; grant of summary judgment against plaintiff was appropriate because of the unsatisfied writing requirement for the validity of contracts affecting the property); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963) (joint venturers entered oral agreement to purchase mineral lease; however, the lease was acquired in the name of only one of the venturers and later sold at a profit; other venturer filed suit to recover share of the profits; held: the lack of a written contract was fatal to the plaintiff's claim: because the contract related to the sale of immovable property, it was required to be in writing); Ogden v. Ogden , 93-1413 (La. App. 3 Cir. 9/21/94), 643 So.2d 245 (grant of exception of no cause of action was affirmed where first joint venturer sued second joint venturer in "tort" for breach of an oral agreement to pay monies arising out of an oil and gas lease; in holding that the lack of a written agreement was fatal, the court stated "few concepts are as firmly rooted in our statutory law and jurisprudence as the principle that agreements as to immovable property must be in writing").

Notably, this is the same Woodward and previous owner of the 365 tract who refused to sell it to Lucky.